**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **ALBERT M. BARGESKI,** | * | |
| Appellant, | * | |
| v. | * | Civil Action No. RWT 05-0962 |
| **CHERYL E. ROSE,** | * | RWT 05-1410 |
| Appellee/Trustee | * | |
| v. | * | |
| **AUDREY YVONNE BARGESKI**, | * | |
| Debtor/Appellee | * | |

**MEMORANDUM OPINION**

The Appellee Cheryl E. Rose ("Trustee") initiated an adversary proceeding in the United States Bankruptcy Court for the District of Maryland, Greenbelt Division pursuant to 11 U.S.C. §§ 549 & 550 against the Appellant Albert M. Bargeski ("Albert") in which she sought to recover, as an unauthorized post-petition transfer, the value of a one-half interest in the former marital home of Albert and his ex-wife, Debtor Audrey Yvonne Bargeski ("Audrey").[1] Albert filed an answer to the Trustee's complaint and then filed a third party complaint against Audrey, seeking indemnification under the parties' separation agreement. After a trial, the Bankruptcy Court ultimately determined that the Trustee was entitled to recover one-half of the equitable interest in the Bargeskis' former marital home, and dismissed Albert's third party indemnity complaint against Audrey. From these decisions, Albert appeals. Reviewing the Bankruptcy Court's findings of fact for clear error and

---

[1] During the pendency of the Debtor's bankruptcy proceedings, the Bargeskis separated and Audrey transferred her interest in this real estate to Albert pursuant to the terms of a voluntary separation and property settlement agreement ("separation agreement").

conclusions of law *de novo*, <u>Canal Corp. v. Finnman</u>, 960 F.2d 396, 299 (4th Cir. 1992), this Court modifies the judgment of the Bankruptcy Court and, as modified, affirms it for the reasons stated below.

### BACKGROUND

Albert and Yvonne were married on November 28, 1987. Three months later, Albert added Audrey's name to the title of his home, which he had owned prior to the marriage. The Bargeskis subsequently purchased and sold other homes, ending with the purchase of their final marital residence located on Coldstream Drive ("Coldstream property") in New Market, Maryland, which is the subject of this appeal.

Audrey filed for Chapter 13 bankruptcy on June 26, 2001. Approximately five months later, the Bankruptcy Court confirmed her Chapter 13 plan dated November 6, 2001.[2] As is frequently the case, Audrey's financial problems were accompanied by marital difficulties. On May 21, 2002, the Bargeskis entered into a voluntary separation agreement, and pursuant to this agreement Audrey conveyed her interest in the Coldstream property to Albert on June 26, 2002. Albert recorded the deed to this property on August 13, 2002. On November 21, 2002, on Audrey's motion, the Bankruptcy Court converted the proceeding from a case under Chapter 13 to a case under Chapter 7.

On June 26, 2003, Albert sold the Coldstream property to a third party for approximately

---

[2] Schedules in the Chapter 13 proceeding stated that the value of the property at Coldstream Drive was $244,480, and that liens against the property totaled approximately $175,000. Audrey claimed $2,000 of this property as exempt.

2

$295,000.[3] On April 14, 2004, the Trustee filed a complaint seeking to recover from Albert the value, as of June 26, 2003, of Audrey's interest in the Coldstream property[4] which had been transferred to her husband.[5] On December 3, 2004, Audrey filed an Amended Schedule C, claiming the Coldstream property as exempt. The Trustee objected to this amendment, claiming that it was made in bad faith. On January 4, 2005, the Bankruptcy Court sustained the Trustee's objection "because Debtor [Audrey] no longer owns any interest in the property that she seeks to exempt. All that she accomplishes by the amendment is to abuse the bankruptcy process." See January 4, 2005 Memorandum of Decision at 2.

The Bankruptcy Court conducted a trial on the Trustee's Complaint to Avoid and Recover the Post-Petition Transfer on January 13, 2005. At this time, the Court also heard Albert's third party complaint for indemnification from Audrey. In a February 24, 2005 Memorandum of Decision, the Bankruptcy Court concluded that the Trustee should be allowed to avoid and recover from Albert the value as of June 26, 2003, of Audrey's post-petition transfer, and on March 18, 2005, entered a judgment in favor of the Trustee in the amount of $68,929.18. Albert filed a timely notice of appeal, which was docketed in this Court as Case No. 05-RWT-962. On May 5, 2005, the Bankruptcy Court entered an order dismissing Albert's third party complaint, and Albert filed another timely notice of

---

[3] It was stipulated by the parties that the value of the property at the time of sale was $305,000.

[4] The Trustee originally sought to recover from Albert one-half of the equitable interest in the former marital home, a pontoon boat, and a 1994 Toyota Camry. Only the former marital home is at issue in this appeal because Audrey claimed the other property as exempt in her original bankruptcy action.

[5] The Trustee did not file an action against the ultimate purchaser of this property, as such an individual would have had a defense to the Trustee's action as a good faith purchaser under § 549(c) of the Bankruptcy Code.

3

appeal, which was docketed in this Court as Case No. 05-RWT-1410. On June 28, 2005, this Court consolidated the two appeals

**DISCUSSION**

Albert argues that the Bankruptcy Court erred when it found that the Trustee was entitled to recover one-half of the equitable interest in the Coldstream Property and further erred in determining the amount of damages awarded to the Trustee. Albert also contends that the Bankruptcy Court erred in dismissing his third party complaint, which sought, pursuant to the separation agreement, indemnification from Audrey for the loss of one-half of the equitable interest in the Coldstream property. Each of these arguments will be discussed in turn.

**The Trustee's Recovery of the Debtor's Post-Petition Transfer**

A Trustee may avoid an unauthorized transfer under § 549 of the Bankruptcy Code, which provides (in relevant part) that

> (a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate -
>    (1) that occurs after the commencement of the case; and
>    (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or
>       (B) that is not authorized under this title or by the court.

11 U.S.C. § 549. If a Bankruptcy Court determines that a Trustee is entitled to avoid a transfer under § 549, § 550 provides guidance on the amount that the Trustee may recover:

> (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section . . . 549 . . . of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from -
>    (1) the initial transferee of such transfer or the entity for whose benefit such a transfer was made; or
>    (2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550. Albert asserts that Audrey's bankruptcy estate did not include an interest in the Coldstream property, and that the Bankruptcy Court therefore erred in awarding to the Trustee one-half of the equitable interest in that property. Specifically, Albert contends that to permit the Trustee to recover one-half of the equity in the real estate ignores the nature of tenants by the entirety ownership under state law.

Albert's argument, however, fails to take into account the effect of the parties' divorce on the status of their former marital home in the context of Audrey's bankruptcy proceeding. Upon the Bargeskis' divorce, the Coldstream property previously owned as tenants by the entirety was converted by operation of law into a tenancy in common. Bruce v. Dyer, 524 A.2d 777, 781 (Md. 1987). See also In re Lowery, 203 BR 587 (Bankr. Md. 1996). Therefore, once the Bargeskis' divorce was final, Audrey's bankruptcy estate retained a one-half interest in the property as a tenant in common. As the Bankruptcy Court noted in In re Lowery, "although severance of the entireties estate [does] not vest the debtor with a new interest in property, the severance [does] lift the protections against the property interest the debtor held by virtue of the entireties status." Lowery, 203 B.R. at 589. As property of the estate, therefore, Audrey's one-half interest as a tenant in common in the Coldstream property could only be transferred if authorized by the Bankruptcy Code. Here, the transfer was unauthorized because Audrey did not transfer her one-half interest in the property in the ordinary course of business, see 11 U.S.C. § 1303, nor did she seek permission from the Bankruptcy Court to consummate this transaction, see 11 U.S.C. § 363(b)(1).

The Bankruptcy Court did not allow Audrey to amend her exemptions to add the Coldstream property, and Albert's assertion that the property is nevertheless exempt runs contrary to logic and case law. A debtor may claim property as exempt under the Bankruptcy Code, but in the event that a debtor or a dependent does not claim property as exempt, the debtor cannot receive the benefit of

any exemption.[6]  See 11 U.S.C. § 522; Bankr. R. 4003.  The property was not exempted, and does not somehow become exempt because it was titled in a "tenancy by the entirety," as Albert asserts.  As discussed above, the law makes clear that the Bargeskis' divorce had the effect of converting the entireties property to property held as tenants in common.  The bankruptcy estate thus became the co-owner of the Coldstream Property with Albert as tenants in common.  This one-half interest in the property remained an asset of the estate at the time of its transfer to Albert, which was not authorized as a sale in the ordinary course of business or after notice and hearing in the Bankruptcy Court.  Therefore, the Bankruptcy Court therefore did not err in allowing the Trustee to avoid this unauthorized transfer.

While the harsh reality faced by Albert seems unjust because he did nothing of a dishonest nature in connection with this property, this Court agrees with the observation of the Bankruptcy Court that "this case involves an unfortunate combination of actions taken in good faith by Mr. Bargeski that interacted with the harsh provisions of the Bankruptcy Code to produce [this] unfair result."[7]  February 23, 2005 Memorandum of Decision at 4.  Unfortunately, like the Bankruptcy Court, this Court remains bound by the unforgiving and unsympathetic provisions of the bankruptcy laws, which compel the conclusion that the Trustee did properly acquire a one-half interest in the

---

[6]It is worth noting that even Audrey did not appear to think that her failure to exempt the property initially was irrelevant, as she sought to Amend her Schedule C exemptions to claim the Coldstream property as exempt.

[7]This result becomes more unseemly in light of the fact that Audrey has emerged from her bankruptcy case "unscathed with her Chapter 7 discharge untouched." February 23, 2005 Memorandum of Decision at 4.  In direct contrast to the innocent and honest actions of her ex-husband, the Bankruptcy Court observed that Audrey perjured herself and lied on the witness stand in connection with the bankruptcy proceeding.  The opinion of the Bankruptcy Court details the behavior of Audrey in connection with this case, and other statements of Audrey, about which the Bankruptcy Court remained "convinced" that she lied.  Id.

Bargeskis' former marital home when the tenancy by the entirety was severed as a result of the parties' divorce.

## The Amount Recovered by the Trustee

Having concluded that the Bankruptcy Court properly allowed the Trustee to avoid Audrey's unauthorized post-petition transfer to Albert, this Court must now determine whether the proper amount was awarded to the Trustee. Albert concedes that if the transfer is avoided, the Trustee should receive a judgment of one-half of the equitable interest in the Coldstream property. However, the Trustee and Albert have very different views of the snapshot in time from which this Court should derive the value of the property's equity.

Pointing to § 550, the Trustee maintains that the Bankruptcy Court properly awarded $68,929.18 - one half of the stipulated value at the time of sale "minus a sum equivalent to one-half of the liens secured by the subject property as of June 26, 2002." Albert, on the other hand, contends that 11 U.S.C. § 348 (f)(1)(B) limits the Trustee's recovery to one half of the valuation of the property established in the Debtor's Chapter 13 case, and asserts that the Court's confirmation of Audrey's Chapter 13 plan on November 29, 2003, was an implicit finding that the scheduled value of the property was the correct valuation. Therefore, Albert asserts that the Court should look to the $$44,160.09 in equity reflected in the original schedules[8] and allow the Trustee to recover only $22,080.05, and not $68,292.18 as determined by the Bankruptcy Court.

---

[8]Schedule A - Real Property provided the following valuation:
    Current Value:        $244,480.00
    Mortgage:            (143,596.72)
    2nd Mortgage:      (32,275.19)
    Cost of Sale:        (24,448.00)
    Equity:               $44,160.09

This Court is persuaded by Albert's argument. During the pendency of the bankruptcy proceeding, the Coldstream Property appreciated in value, as has much of the real estate in this geographical region. If Audrey had originally filed her case as a Chapter 7 bankruptcy proceeding, then this post-petition appreciation would clearly belong to the bankruptcy estate. See 11 U.S.C. § 1306. However, when a case is converted from a chapter 13 to a chapter 7 proceeding, the § 1306 definition, which includes in the estate property and earnings acquired post-petition, does not apply. Instead, the value of property and secured claims is governed by 11 U.S.C. § 348(f). Under that provision, in the absence of bad faith, the "valuations of property and of allowed secured claims in the Chapter 13 case shall apply in the converted case..."[9] 11 U.S.C. § 348(f)(1)(B). When a case converts from Chapter 13 to Chapter 7, the Debtor is entitled to keep the appreciation that has occurred during the Chapter 13 case. In re Jackson, 317 B.R. 511, 513 (N.D. Ill. 2004).

Section 348(f) does not provide specific guidance of what constitutes a "valuation" in a Chapter 13 case. Analyzing this provision and the congressional intent behind its terms, many courts have held that confirmation of a Chapter 13 plan constitutes an implicit finding that the valuation of the property detailed in the Debtor's schedule was proper. See In re Slack, 290 BR 282, 287 (Bankr. D. N.J. 2003)("[W]hen the Chapter 13 plan [i]s confirmed (without objection) there was an implicit finding that the scheduled value . . . [i]s proper."); In re Kuhlman, 254 B.R. 755, 758 (Bankr. N.D. Cal. 2000)(stating that "courts are already interpreting the statute liberally by considering confirmation of a plan to be an implicit valuation"); In re Page, 250 B.R. 465 (Bankr. D. N.H.

---

[9] Section 348(f)(2) provides that "If the debtor converts a case under chapter 13 of this title to a case under another chapter under this title in bad faith, the property in the converted case shall consist of the property of the estate as of the date of conversion." There are no such allegations of bad faith here that would require the court to look at the value of the property as of the date of conversion.

8

2000)(finding that in a converted case, there is implicit valuation in plan confirmation order); In re Wegner, 243 B.R. 731 (Bankr. D. Neb. 2000)(using the scheduled value of home in a converted case).[10] Such a conclusion comports with the legislative intent of the Bankruptcy Reform Act of 1994, which brought § 348(f) into the Bankruptcy Code to "encourage debtors to reorganize their affairs through chapter 13 rather than to immediately liquidate their property under chapter 7." Warren v. Peterson, 298 B.R. 322, 326 (N.D. Ill. 2003)  As one Bankruptcy Court explained, through § 348

> Congress has specifically provided safeguards to protect debtors from the adverse consequences to them of choosing chapter 13 relief as opposed to chapter 7 relief.  If the chapter 13 fails, the debtors in good faith may convert their case to one under chapter 7.  *In such cases the property of the estate and valuation of secured claims is determined as of the date of the original filing as opposed to the conversion date*. 11 U.S.C. § 548(f).  These provisions are a significant benefit and protect the debtor from a choice which time has shown did not work out.

In re Doherty, 229 B.R. 461, 466 (Bankr. E.D. Wash. 1999)(emphasis added).

Implicit valuation is not only consistent with the congressional intent underlying § 348(f), but also serves the interest of judicial economy by establishing the valuation of property at an early stage in the proceedings.  Warren, 298 B.R. at 326. ("[D]etermining the present value of property, such as real estate, is already a complicated issue, and calculating the historic value of property is even more complicated.") Applying this reasoning to this case, through confirmation of Audrey's plan, this Court concludes that "there was an implicit valuation that the scheduled value [of $44,160.09] was proper," and "upon conversion from chapter 13 to chapter 7 the same....value must be used." In re Slack, 290 B.R. at 287.

---

[10]Implicit valuation has been accepted in this Bankruptcy Court as well. See Unreported opinion in In re Adesina F. Jaiyeola, 98-11940-DK, where Chief Judge Keir cited with approval In re Slack, In re Kuhlman, Warren v. Peterson, In re Page and In re Wegner.

The Trustee's reliance on In re Jackson in support of her contention that she should be able to recover $68,929.18 - the value of the Coldstream property at the date of its sale by Albert - is misguided. As an initial matter, In re Jackson runs contrary to the majority of cases, cited above, which accept the propriety of using implicit valuations in converted cases. More importantly, however, In re Jackson did not disagree with the fundamental premise of these cases regarding the proper date of valuation to be used in converted cases. In re Jackson only rejected the "implicit valuation" approach in favor of holding a hearing to determine a property's value as of the time "when the Chapter 13 petition was originally filed." 317 B.R. at 516.[11] The court explicitly recognized that the value of property in a converted case is the value "at the start of the chapter 13 case," and that the purpose of a valuation hearing would not be to determine its current value, but rather "to determine what the real property was worth *when the chapter 13 petition was originally filed*." Id. (emphasis added).

Therefore, even if this Court were to follow the reasoning of In re Jackson, this would only entitle the Trustee to a hearing to determine the value of the Coldstream property *at the time Audrey first filed her Chapter 13 petition* - not the value at the time of its later sale by Albert that she was awarded by the Bankruptcy Court. In the proceedings below, no one questioned the validity of the valuation assigned to the property at the time of the Chapter 13 filing, nor was any request made to hold a Jackson hearing to determine its value at the time of the Chapter 13 filing. Thus, even if this court were to accept the rationale of Jackson, it would be of no avail in this case because the

---

[11] The In re Jackson court's concern with implicit valuation centered around the possibility that a debtor might schedule property with a deliberately low valuation, have the plan confirmed, and later convert the case to a chapter 7 proceeding in which the artificially low valuation would be accepted without question. In this case, there is no allegation that Audrey deliberately understated the valuation provided in her Chapter 13 plan.

10

valuation *as of the date of the Chapter 13 case filing* was unquestioned and no hearing was requested to ascertain the property's value as of that date.

The Trustee's demand for one half of the stipulated value of the property as of the date of the sale of the property simply ignores the posture of this case and the mandate of § 348 regarding the proper valuation in converted cases. Under §§ 549 and 550, a Trustee may only avoid and recover that which rightfully belongs to the bankruptcy estate. Put another way, as the Bankruptcy Court noted in a case cited in the Trustee's brief, "the purpose of section 550 is 'to restore the estate to the financial condition it would have enjoyed if the transfer had not occurred.'" In re American Way Serv. Corp., 229 B.R. 496, 530 (Bankr. S.D. Fla. 1999).

With this restoration as its goal, § 550 therefore cannot be viewed with a tunnel vision that ignores the limitations on the value of property in converted cases set by § 348 (f)(1)(B). Before the unauthorized transfer, the value of the Coldstream property to the estate was circumscribed by 348 (f)(1)(B) and limited to the value when Audrey's Chapter 13 petition was filed. This Court will not allow the Trustee to recover the greater value she requests - the value of the property at the time of its sale- simply because Albert is a transferee and not the Debtor. Audrey was entitled to retain any appreciation in the value of the property, and when she transferred it without court approval, Albert should not be in a worse position than Audrey would have been had the transfer not taken place. Although the Trustee's brief attempts to make much of this distinction, this Court concludes that this distinction is one without a difference, and cannot serve as the basis for providing the Trustee with a windfall and fortuitous recovery greater than the amount she would have received in the absence of the unauthorized transfer. Thus the Trustee may only recover one-half of the value of Property at the start of Audrey's Chapter 13 case as established in the original schedules and confirmed by her Plan. Accordingly, the judgment of the Bankruptcy Court will be modified in accordance with

this Memorandum Order, and as modified will be affirmed.

### **Albert's Third Party Complaint for Indemnification**

Under the terms of the Bargeskis' separation agreement, each party agreed to indemnify and hold harmless the other party for any breach of the agreement. Albert's appeal asserts that his third party complaint for indemnification arose when the Trustee filed her complaint to avoid and recover the property transfer, and that it therefore arose post-conversion and is not subject to discharge by Audrey.

Albert offers a very narrow view of a "claim," suggesting that a "claim exists only if before the filing of the bankruptcy petition, the relationship between the debtor and the creditor contained all the elements necessary to give rise to a legal obligation - 'a right to payment' - under the relevant non-bankruptcy law." Riverwood Int'l Corp. v. Olin Corp. (In re Manville Forest Prod. Corp., 225 BR 862, 866 (Bankr. S.D.N.Y. 1998). This view is overly restrictive. Through the bankruptcy laws, Congress sought to create a framework that promotes a fresh start for the debtor. See, e.g., Ohio v. Kovacs, 469 U.S. 274, 279 (1985). Legislative history confirms that Congress intended the term "claim" to have the "broadest possible definition. . . [including] all legal obligations of the debtor, no matter how remote or contingent." H.R. Rep. No. 95-595, at 649 (1977). Therefore, a claim in bankruptcy includes a claim for indemnification, see Grady v. A.H. Robbins, 63 B.R. 986 (4th Cir. 1986), and contingent and unmatured payments are considered 'claims' under the Bankruptcy Code. See In re Parks, 281 B.R. 899, 901-02 (Bankr. E.D. Mich. 2000), citing Riverwood Int'l Corp. v. Olin Corp. (In re Manville Forest Prod Corp., 225 B.R. 862, 866 (Bankr. S.D.N.Y. 1998)("it is possible that a right to payment that is not yet enforceable at the time of the filing of the petition under nonbankruptcy law may be defined as a claim within Section 101(5)(A) of the Code."). The

Fourth Circuit observed that "Congress intended to adopt the broadest possible definition of the term 'claim,' so that a bankruptcy case would deal with all of the debtor's legal obligations."[12] Stewart Foods, Inc. v. Broecker (In re Stewart Foods, Inc.), 63 F.3d 141 (4th Cir. 1995).

The Bargeskis entered into their separation agreement on May 21, 2002, during the pendency of Audrey's Chapter 13 proceeding. Just as the parties' rights and obligations were created on this date with respect to the transfer of the marital home, all other obligations contained in the agreement, including the right to indemnity, were also created on May 21, 2002. Although Albert's claim for indemnification was a contingent and unmatured right of payment until the Trustee filed her petition to avoid and recover the transfer of the Coldstream property, it still qualifies as a claim subject to discharge by Audrey's bankruptcy. Albert asserts that the act giving rise to liability in this case was the Trustee's filing of her complaint against him, and that there are no pre-petition acts that would give rise to liability or a claim under the indemnity agreement. This view is incorrect. All of the obligations contained in separation agreement were enforceable upon its execution and its later incorporation into the decree of divorce. Just as the parties' rights and obligations were thus created prior to conversion, all other obligations, including the indemnity clause were also created at this time, and prior to the conversion. Therefore, the Bankruptcy Court properly concluded that Albert's third party complaint for indemnification was a contingent debt that was discharged in Audrey's bankruptcy.

---

[12] The Bankruptcy Court embraced this broad view of a "claim," stating in the hearing regarding Albert's third-party complaint that "a claim means a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or a right to an equitable remedy." Page 104 of Trial Transcript at lines 5-9.

## CONCLUSION

As a result of the unique circumstances of this case and application of the bankruptcy laws, the Trustee of Audrey's bankruptcy estate was able to recover from Albert something that he thought in good faith had been transferred to him by Audrey as part of their marital settlement. While this may be a harsh result, the Court has concluded that the Trustee got more than that to which she was entitled, thus removing at least some of the sting of the Trustee's success in avoiding the transfer to Albert. Over the last quarter century, the field of domestic relations has become far more complex than a mere family matter, and now routinely requires the application of complex property, tax, pension and, as this case demonstrates, bankruptcy laws. Thus, this case serves as a reminder of the need to consider carefully applicable bankruptcy laws when entering into transactions with those involved in such proceedings.

<u>March 30, 2006</u>  
DATE

<u>            /s/            </u>  
ROGER W. TITUS  
UNITED STATES DISTRICT JUDGE